UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES ELDER MORRISON, | : | **CIVIL NO. 1:09-CV-0324** |
| | : | |
| Plaintiff | : | (Magistrate Judge Smyser) |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| | : | |
| Defendant/Third- | : | |
| Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| STEWART TITLE GUARANTY COMPANY, | : | |
| | : | |
| Third-Party | : | |
| Defendant | : | |

## <u>MEMORANDUM AND ORDER</u>

I. Background and Procedural History.

The plaintiff commenced this action in the Court of Common Pleas of Perry County, Pennsylvania. On February 19, 2009, the defendant removed the case to this court. On June 25, 2009, the plaintiff filed an amended complaint.

The plaintiff is James Elder Morrison.  The defendant is Wells Fargo Bank, N.A.

The plaintiff alleges the following facts in the amended complaint.

The plaintiff was the fee simple owner of a parcel of land in Tyrone Township, Perry County.  There is an individual who resides in Tyrone Township with the name of James Eugene Morrison.  In 2002, this other James E. Morrison and his wife entered into a mortgage with Provident Bank.  This mortgage erroneously purports to lien the plaintiff's property.  The plaintiff never signed the mortgage.  The other James E. Morrison (James Eugene Morrison) and his wife signed the mortgage without the plaintiff's knowledge or consent.  The mortgage was subsequently assigned to Wells Fargo.

In 2007, Wells Fargo filed a mortgage foreclosure action against the other James E. Morrison (James Eugene Morrison), his wife and the plaintiff's property.  The plaintiff advised Wells Fargo that there are two individuals

with the name James E. Morrison who live and/or own property in Tyrone Township and that the James E. Morrison (James Eugene Morrison) who signed the mortgage does not own the property listed in the mortgage.

The plaintiff subdivided his land. As a result of the cloud upon the title of the plaintiff's property created by the mortgage, the plaintiff could not sell one of the lots at full value.

The plaintiff commenced this action in the Court of Common Pleas of Perry County by filing a Complaint to Compel a Release of Mortgage Pursuant to Pa.R.C.P. 1061(b)(3). Wells Fargo continued to refuse to file a release of mortgage.

The plaintiff was prevented from borrowing money against his land due to the cloud on the title to the land. The plaintiff's credit has been damaged. The plaintiff has been prevented from realizing the benefits of the use of his land, prevented from realizing the full value of his land and

forced to incur expenses and costs. He has also been frustrated, inconvenienced, humiliated and embarrassed.

The amended complaint contains six counts. Count I is a claim of negligence. Count II is a claim of conversion of property. Count III is a claim of commercial disparagement. Count IV is a claim of tortious interference with contract. Count V is a claim of violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). Count VI is a claim for punitive damages.

On July 13, 2009, Wells Fargo filed an answer to the amended complaint.

On July 7, 2009, Wells Fargo filed a third-party complaint against Stewart Title Guaranty Company, and on November 19, 2009, Wells Fargo filed an amended third-party complaint against Stewart Title Guaranty Company. Wells Fargo alleges the following facts in the amended third-party complaint.

Stewart Title's agent acted as the settlement agent for the 2002 transaction where James Eugene Morrison (the other James E. Morrison) and his wife entered into the mortgage with Provident Bank. Stewart Title and/or its agent conducted the title search, prepared the closing documents on behalf of Provident and was responsible for recording the necessary documents regarding the property. In relation to the 2002 mortgage, Stewart Title issued a Loan Title Insurance Policy to Provident Bank insuring among other things that James Eugene Morrison owned the property in fee simple. The policy affords title insurance to Wells Fargo as successor/assignee of Provident Bank against liability in accordance with the terms, conditions, limitations and amounts defined in the policy.

Stewart Title and/or its agent erred when conducting the title search and preparing the closing documents. The title commitment incorrectly identified the property, and, as a result, there was a defect in title to the property as the property was not owned by the mortgagors. Stewart Title and/or its agent also erred in preparing the documents for recording regarding the property.

In June of 2007, Wells Fargo filed a title claim with Stewart Title in connection with foreclosure proceedings commenced on the property. In October of 2007, Stewart Title denied the claim stating that the other James E. Morrison (James Eugene Morrison) was in fee simple ownership of the property.

Due to its investigation during the course of this case, Wells Fargo determined that the other James E. Morrison (James Eugene Morrison) never owned or had an interest in the property. Wells Fargo subsequently released its lien on the property.

In February of 2009, Wells Fargo made another claim to Stewart Title with regard to the current action. Stewart Title appointed counsel to defend Wells Fargo in this matter. However, on June 24, 2009, Stewart Title advised Wells Fargo that it will not be retaining counsel to continue to defend Wells Fargo in this action on the basis that liability was cut off when the mortgage was satisfied.

The amended third-party complaint contains five counts. Count I is a breach of contract claim. Count II is a negligence claim. Count III is a bad faith claim. Count IV is a claim for indemnification. Count V is a contribution claim.

On December 8, 2009, Stewart Title filed an answer to the amended third-party complaint.

On March 21, 2010, Wells Fargo filed a motion for summary judgment and documents in support of that motion. On March 22, 2010, Wells Fargo filed a statement of material facts and a brief in support of its motion for summary judgment. On April 2, 2010, the plaintiff filed a response to Wells Fargo's statement of material facts, a brief and documents in opposition to Wells Fargo's motion for a summary judgment. On April 5, 2010, Stewart Title filed a response to Wells Fargo's statement of material facts and a brief and documents in opposition to Wells Fargo's motion for summary judgment.

On March 22, 2010, Stewart Title filed a motion for summary judgment, a statement of material facts, a brief and

documents in support of its motion for summary judgment.  On
April 5, 2010, Wells Fargo filed a response to Stewart Title's
statement of material facts, a brief and documents in
opposition to Stewart Title's motion for summary judgment.  On
April 19, 2010, Stewart Title filed a reply brief in support of
its motion for summary judgment.

The parties have consented to proceed before a
magistrate judge pursuant to 28 U.S.C. § 636(c).  The case is
scheduled for trial beginning on June 7, 2010.

In this Memorandum and Order we address the two pending
motions for summary judgment.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The moving party bears the initial

responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper

inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.  Material Facts.

The following facts are undisputed for purposes of the pending summary judgment motions.

On January 3, 1997, Glenn D. Morrison deeded Parcel 270,142.00-013.00 to his son, the plaintiff James Elder Morrison, via a warranty deed which was recorded in Perry County. *Doc. 55-2 at ¶1; Doc. 60 at ¶1; and Doc. 62 at ¶1.*[1]

On August 3, 2002, James Eugene Morrison and Erin Morrison purported to mortgage RR2, Box 957, Landisburg, Pennsylvania (the Landisburg property) to the Provident Bank d/b/a PCFS Financial Services, Inc. *Id. at ¶2.*  On August 20, 2002, that mortgage was recorded in the Perry County Records. *Id.*  The mortgage was security for an adjustable rate loan

---

1. Stewart Title responded to this statement taken from Wells Fargo's Statement of Material Facts as follows: "Denied as stated. The Deed, Exhibit 1, is a document that can be read on its own terms without further response required thereto herein." *Doc. 62* at ¶1.  Stewart Title responded similarly to numerous other statements from Wells Fargo's Statement of Material Facts.  Such denials do not indicate in what manner the statement is disputed and do not include references to the parts of the record that support the denials.  Accordingly, we will disregard such denials.

obtained by James Eugene Morrison and Erin Morrison in the
amount of $108,000.00. *Id. at ¶3.* James Eugene Morrison and
Erin Morrison obtained the loan to refinance their purchased of
a mobile home that was placed on the Landisburg Property. *Id.
at ¶4.* The loan paid off a prior mortgage on the Landisburg
property. *Id. at ¶6.* The Landisburg property consisted of two
acres and was owned by Blaine Morrison, the father of James
Eugene Morrison. *Id. at ¶5.*

In relation to the loan, on July 23, 2002, National
Real Estate Information Services (NREIS) issued a title
commitment as agent of Stewart Title. *Id. at ¶7.*[2] The title

---

[2]  Stewart Title admits in part and denies in part this
statement. *Doc. 62 at ¶7.* Stewart Title admits that NREIS issued
the title commitment.  However, Stewart Title contends that NREIS
is a limited non-exclusive agent of Stewart Title and that the
agency relationship is limited to issuance of title insurance
policies as defined by the Title Insurance Underwriting Agreement
between Stewart Title and NREIS. Stewart Title contends that NREIS
was not an agent for Stewart Title for the purposes of providing
abstracting, closing or escrow services, conducting title searches
or reviewing, preparing or recording closing documents. However,
Stewart Title does not specifically deny that NREIS issued the
title commitment as agent for Stewart Title. The Title Insurance
Underwriting Agreement between Stewart Title and NREIS provides
that "Title polices" include "all contracts of title insurance or
(continued...)

commitment correctly references the commonly known address for the Landisburg property, but it incorrectly references the parcel identification number for the plaintiff's property. *Id. at ¶8.* The title commitment also incorrectly references the grantor, deed and legal description for the plaintiff's property rather than the property owned by Blaine Morrison. *Doc. 60 at ¶8a.* On August 20, 2002, Stewart Title issued a Loan Title Insurance Policy (the policy) to Provident Bank insuring among other things that James Eugene Morrison owned the subject property in fee simple. *Doc. 55-2 at ¶10; Doc. 60 at ¶10; and Doc. 62 at ¶10.*

On March 14, 2003, Provident Bank transferred the loan and assigned its interest in the mortgage to Wells Fargo. *Id. at ¶12.* The assignment of the mortgage to Wells Fargo was

2.  (...continued)
guaranty, including title insurance policies, endorsements, binders, and commitments." *Doc. 62-3 at 4.* Further, the title commitment specifically provides that it was issued by an agent on behalf of Stewart Title. *Doc. 53-10 at 1.* Accordingly, we consider it to be undisputed that NREIS issued the title commitment as agent for Stewart Title.

recorded on March 13, 2006 with the Perry County Recorder of Deeds. *Id.* The policy affords title insurance to Wells Fargo as successor/assignee of Provident Bank against liability in accordance with the terms, conditions, limitations and amounts defined in the Policy. *Id. at ¶11.*

James Eugene Morrison and Erin Morrison defaulted on the terms of their note and mortgage, and, therefore, Wells Fargo initiated foreclosure proceedings. *Id. at ¶13.* On March 21, 2007, Wells Fargo filed a Mortgage Foreclosure Complaint in the Court of Common Pleas of Perry County. *Id. and Doc. 53-13 at 1.* James Eugene Morrison and Erin Morrison failed to answer the Mortgage Foreclosure Complaint, and a default judgment and a Notice of Sheriff's Sale of Real Property were entered on May 3, 2007. *Doc. 55-2 at ¶14; Doc. 60 at ¶14; and Doc. 62 at ¶14.*

Attorney Scott Morrison, the plaintiff's cousin, saw the foreclosure notice and notified the plaintiff. *Id. at ¶¶15 & 16.* On May 15, 2007, Scott Morrison sent a letter to Lauren

R. Tabas, Esquire of Shapiro & Kreisman, LLC, foreclosure counsel for Wells Fargo, stating that there are "two gentlemen with the name of James E. Morrison living and/or owning property in Tyrone Township, Perry County" and asserting that James Eugene Morrison and Erin Morrison do not own the land listed on the mortgage. *Id. at ¶17.*

On June 19, 2007, Premium Title Services, Inc. filed a title claim with Stewart Title on behalf of Wells Fargo. *Id. at ¶18.* The body of the June 19, 2007 letter from Premium Title Services to Stewart Title reads:

> Please be advised that our client, Ocwen Loan Servicing LLC is the agent and attorney in fact [for] **Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A., as Trustee f/k/a Norwest Bank Minnesota, N.A., as Trustee for the registered holders of Morgan Stanley ABS Capital I Inc. Trust 2003-SD1, Mortgage Pass-Through Certificates, Series 2003-SD1** of the mortgage/deed of trust under the above referenced title insurance policy and successor insured.  This letter shall serve as notification of a claim under said policy, of the below enumerated title defects.  Please be advised that this claim was found during the course of foreclosure proceedings.

Accordingly, please take any steps necessary to resolve this matter expediently.

**The property is located in Perry County. We have been advised that . . . there are 2 James Morrison[s] located in Perry County, Tyrone Township.  It appears that the property that Ocwen is foreclosing on is a 90 acre property.  However, this property is not owned by Ocwen and there is no mortgage on the 90 acre[s].  The property that our James Morrison owns is actually [a] mobile home.  Neither Mr. Morrison nor Ocwen owns . . . the land that the mobile home sits on.  Ocwen only owns the mobile home.**

In order to facilitate your assessment of this claim, we are enclosing copies of the documentation relating to the title policy and the defect, as applicable.

Please acknowledge receipt of this letter and address all non-litigation related correspondence in this regard to the undersigned at the above address referencing the loan number.  Thank you in advance for your prompt attention to this matter.

*Doc. 60-6 at 1 (emphasis in original).*  Under the

signature line, the letter provides: "Attachments: Title

Search, Title Commitment & Hud-1." *Id.*

On July 11, 2007, Stewart Title acknowledged the claim. *Doc. 55-2 at ¶19; Doc. 60 at ¶19; and Doc. 62 at ¶19.* On October 24, 2007, Stewart Title, through its representative Sean H. Bello, denied the claim. *Id. at ¶25.* In the denial letter, after stating that he had reviewed the June 19, 2007 correspondence, attachments and the policy, Bello states:

> Your inquiry concerns whether a potential defect in title exists regarding this matter. Specifically, you believe that there may be an issue as it appears that the defaulting borrower owns only a mobile home, but not the land upon which the home sits. To that end, you have requested that Stewart take any steps necessary to resolve the matter.

*Doc. 53-20 at 1.* Bello then states that the claim is denied, and, after citing at length from the policy, states:

> In comparing the policy, the insured mortgage, and the appraisal, I have noted that all three reference the same parcel of property identified at Deed Book 0987 Page 301 in the Perry County land records. Said deed evidences that the subject property was conveyed by Glenn D. Morrison to the borrower, James E. Morrison. In addition, the appraisal's general description (Page 1 of the enclosed appraisal) identifies the home as a one story detached ranch style structure serviced with gas and electricity. The appraisal further indicates that the size of the parcel is 2 acres.

> Estimated value of the home and land is
> $147,500.00.
>
> By looking at the deed and the appraisal, it is
> evident that the borrower owns the property
> referenced in that deed.  Further, he pledged
> it as collateral for the insured mortgage.  In
> light of the evidence provided, the insured has
> a valid mortgage on the property referenced in
> Scheduled A of the insured's policy and also in
> the deed referenced above.  Accordingly, no
> loss has been suffered by the insured in this
> instance and you should be able to proceed with
> your foreclosure action.

*Id. at 1-2.*  Bello closes as follows:

> If you feel that I have misunderstood the facts
> of your claim, if there are additional facts
> that you believe should be considered, or if
> additional allegations are made that may bring
> this matter within coverage of the Policy,
> please contact me immediately.  In the event
> that any additional facts or material are
> presented, Stewart reserves the right to amend
> or supplement this denial.

*Id. at 2.*


On December 17, 2007, Wells Fargo vacated the judgment against James Eugene Morrison and Erin Morrison and dismissed the foreclosure action. *Doc. 55-2 at ¶26; Doc. 60 at ¶26; and Doc. 62 at ¶26.*

19

In 2008, the plaintiff began selling his property in parcels. *Id. at ¶¶53-59.* The plaintiff never marketed the property and he never talked to a real estate professional regarding marketing. *Id. at ¶54.*

On July 25, 2008, the plaintiff sold a 13-acre parcel of his property to Michael and Emily Simmers for $127,500.00. *Id. at ¶¶53 & 55.* The Simmers did not know of the mortgage on the property when the price was determined, and, therefore, the mortgage did not affect the sales price. *Id. at ¶55.* The plaintiff gave the Simmers assurances at closing that the Wells Fargo mortgage was not valid. *Id.*

On July 25, 2008, the plaintiff sold a 1.166-acre parcel of his property to Pennmor Trust for $7,000.00. *Id. at ¶56.* Attorney Scott Morrison serves at Trustee for the Pennmor Trust. *Id.* On January 2, 2009, the plaintiff sold another parcel containing two acres to the Pennmor Trust for $13,000.00. *Id. at ¶57.*

On January 15, 2009, the plaintiff sold 15.082 acres to his brother, David Morrison, and his wife for $7,500.00 per acre. *Id. at ¶58.*

The plaintiff sold the last parcel of his property to Attorney Scott Morrison for $1,375.00 per acre. *Id. at ¶59.*

On January 30, 2009, the plaintiff commenced the instant action. *Id. at ¶27.* On February 13, 2009, Wells Fargo, through its agent Ocwen Loan Servicing LLC[3], again filed a title claim with Stewart Title. *Id. at ¶29 and Doc. 53-23 at 1.* By a letter dated March 19, 2009, Bello informed Wells Fargo that it had hired the law firm of Shumaker Williams, P.C. to represent Wells Fargo. *Id. at ¶31.* Shumaker Williams did not enter an appearance in the instant action, but it did review relevant documents in this case. *Id. at ¶32.*

---

[3]. Henceforth, since Ocwen Loan Servicing LLC was agent for Wells Fargo, for ease of reference we refer to actions taken by Ocwen as actions taken by Wells Fargo.

On or about March 27, 2009, Shumaker Williams instituted an action in the Court of Common Pleas of Perry County by filing a Praecipe for Writ of Summons and a Praecipe for Lis Pendens against James Eugene Morrison, Erin Morrison, Blaine Morrison and Elizabeth Morrison. *Doc. 57 at ¶18 and Doc. 63-2 at ¶18.*[4]  This action led to Blaine Morrison re-financing his property to pay off the mortgage of his son, James Eugene Morrison. *Id. at ¶19.*

On April 1, 2009, Shumaker Williams sent a proposed release of the mortgage on the plaintiff's property to counsel for Wells Fargo asking that the release be executed. *Doc. 55-2 at ¶33; Doc. 60 at ¶33; and Doc. 62 at ¶33.*  By an email dated

---

4. Wells Fargo denies this statement from Stewart Title's Statement of Material Facts on the basis that Stewart Title refers to an Exhibit 9, that there is no Exhibit 9 to Stewart Title's motion for summary judgment and that Stewart Title has not provided any evidence of when the case was instituted in the Perry County Court of Common Pleas.  However, there is an Exhibit 9 to Stewart Title's motion for summary judgment. *See Doc. 56-11.*  That Exhibit contains a Praecipe for Writ of Summons and a Praecipe for Lis Pendens dated March 27, 2009. *Id.*

April 14, 2009, Shumaker Williams inquired whether Wells Fargo would sign the release. *Doc. 53-33 at 8.* In response, counsel for Wells Fargo indicated that Wells Fargo was obtaining the appropriate authority to sign off on the release. *Doc. 53-33 at 7.*

By an email dated April 21, 2009, Shumaker Williams indicated that the plaintiff will end the litigation if the release is filed and requested that Wells Fargo hurry the process along. *Doc. 53-33 at 3.* On May 4, 2009, Wells Fargo executed a release of the mortgage on the plaintiff's property. *Doc. 55-2 at ¶34; Doc. 60 at ¶34; and Doc. 62 at ¶34.* The release was sent via overnight mail to Shumaker Williams on May 5, 2009 along with a limited power of attorney for recording. *Id. at ¶35.* Both the release and limited power of attorney were delivered to Shumaker Williams on May 6, 2009. *Id.* However, those documents were never recorded by Shumaker Williams and have not been returned to Wells Fargo. *Id. at ¶36.*

Also, on May 5, 2009, Wells Fargo sent a proposed
Settlement and Release Agreement and Stipulated Order of
Dismissal to Shumaker Williams for fowarding to plaintiff's
counsel. *Id. at ¶43.* On May 7, 2009, Shumaker Williams
confirmed that the proposed settlement documents were received
by the plaintiff's counsel. *Id. at ¶44.*

On May 8, 2009, the loan made by Wells Fargo to James
Eugene Morrison and Erin Morrison was paid. *Id. at ¶37.* The
action against James Eugene Morrison, Erin Morrison, Blaine
Morrison and Elizabeth Morrison was settled, discontinued and
ended on or about May 11, 2009. *Doc. 57 at ¶21 and Doc. 63-2
at ¶21.*

On May 11, 2009, Shumaker Williams stated to Wells
Fargo that it hoped to see a demand from the plaintiff's
counsel in the near future, and, on May 20, 2009, Shumaker
Williams stated that it had followed up with plaintiff's

counsel asking for a response to the settlement proposal. *Doc. 55-2 at ¶45; Doc. 60 at ¶45; and Doc. 62 at ¶45.*

On May 22, 2009, Shumaker Williams forwarded to Wells Fargo the plaintiff's settlement demand and stated that as Shumaker Williams' representation in the matter has been limited to resolving the title issue and Wells Fargo mortgage has now been paid in full its representation in the matter is concluded. *Id. at ¶47 and Doc. 53-37 at 1.*

On June 8, 2009, Wells Fargo sent an email to Sean Bello asking whether Stewart Title would be retaining new counsel to continue the defense of Wells Fargo in this matter. *Doc. 55-2 at ¶48; Doc. 60 at ¶48; Doc. 62 at ¶48 and Doc. 53-38 at 3.* On June 9, 2009, Bello responded that the request was being reviewed. *Doc. 55-2 at ¶49; Doc. 60 at ¶49; and Doc. 62 at ¶49.* By a letter dated June 24, 2009, Bello denied Wells Fargo's request that Stewart Title retain new counsel on the basis that since the Wells Fargo loan had been paid in full,

Stewart Title's liability under the policy is terminated. *Doc.*
*53-39.*

On June 25, 2009, the plaintiff filed his amended
complaint in this case. *Doc. 57 at ¶26 and Doc. 63-2 at ¶26.*
The amended complaint was filed subsequent to the Wells Fargo
mortgage having been paid in full. *Id. at ¶27.* On June 29,
2009, Wells Fargo sent Bello as copy of the plaintiff's amended
complaint. *Doc. 56-18 at 1.* Wells Fargo demanded that Stewart
Title retain counsel to defend Wells Fargo and that Wells Fargo
be indemnified with regard to any adverse judgment obtained.
*Id.* On July 9, 2009, Stewart Title denied that demand on the
basis that any potential liability of Stewart Title ceased once
the insured loan was paid in full. *Doc. 57 at ¶29 and Doc. 63-2
at ¶29.*

Due to the payoff of the Wells Fargo loan, Ocwen Loan
Servicing LLC prepared a satisfaction of the mortgage. *Doc. 55-
2 at ¶40; Doc. 60 at ¶40; and Doc. 62 at ¶40.* The initial

satisfaction was lost, and, as a result, a satisfaction was not recorded until July 7, 2009. *Id. at ¶41.*

IV.  Wells Fargo's Motion for Summary Judgment.

Wells Fargo is seeking summary judgment as to the plaintiff's claims against it and as to its claims against Stewart Title.  We will begin by addressing the motion as to the plaintiff's claims against Wells Fargo.

A. Plaintiff's Claims.

Wells Fargo is seeking summary judgment as to all of the plaintiff's claims against it.  Wells Fargo contends that all of the plaintiff's claims against it are barred by the statute of limitations.

Wells Fargo argues that the plaintiff's claims are subject to a two-year statute of limitations, that the

plaintiff had notice of the mortgage when it was recorded in August of 2002 but that the plaintiff did not file his amended complaint until June 25, 2009, more than two years after the mortgage was filed.

The first problem with Wells Fargo's argument is that not all of the plaintiff's claims are subject to a two-year statute of limitation.  The UTPCPL claim is subject to a six-year statute of limitation. *See Gabriel v. O'Hara,* 534 A.2d 488, 496 (Pa.Super.Ct. 1987).  Accordingly, the UTPCPL claim is not barred by the statute of limitations.

Even as to the plaintiff's claims that are subject to a two-year statute of limitations, Wells Fargo has not established that those claims are barred by the statute of limitations.

Wells Fargo contends that the plaintiff had public notice of the mortgage when it was recorded.  However, Wells

Fargo has not pointed to any evidence that the plaintiff had actual notice of the mortgage when it was recorded. The recording of the mortgage in the public records provides constructive notice of the mortgage to any subsequent purchaser of the property or any subsequent mortgagee. However, there is no basis to conclude and Wells Fargo has pointed to authority holding that the recording of a mortgage on the property of an owner without the owner's knowledge or consent provides constructive notice to the property owner. There is no apparent reason why a property owner in the situation of the plaintiff would check the property records and find such a mortgage. Accordingly, we reject Wells Fargo's argument that the plaintiff had notice of the mortgage in 2002 when it was recorded.

Wells Fargo argues that, even if the plaintiff did not have notice of the mortgage when it was recorded, the plaintiff had notice of the mortgage in May of 2007, when Attorney Scott Morrison saw the foreclosure notice and notified the plaintiff

of the foreclosure notice.  Wells Fargo concludes that, therefore, the plaintiff's claims are barred because the amended complaint was not filed until June 25, 2009.  However, this argument ignores that the original complaint in this case was filed in the Court of Common Pleas on January 30, 2009, less than two years after May of 2007.  Wells Fargo makes no argument for why the amended complaint should not be deemed to relate back to the date of the filing of the original complaint pursuant to Fed.R.Civ.P. 15(c).  Accordingly, Wells Fargo has not established that the plaintiff's claims are barred by the statute of limitations.

We now turn to the merits of the plaintiff's claims.

Negligence Claim.

Under Pennsylvania law, the elements of a negligence claim are: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of

conduct for the protection of others against unreasonable

risks; (2) defendant's failure to conform to the standard

required; (3) a causal connection between the conduct and the

resulting injury; and (4) actual loss or damage resulting to

the plaintiff.  *R.W. v. Manzek,* 888 A.2d 740, 746 (Pa. 2005).

Wells Fargo contends that it is entitled to summary

judgment on the plaintiff's negligence claim because it did not

owe a duty to the plaintiff.

"The existence of a duty is a question of law for the

court to decide." *Manzek, supra,* 888 A.2d at 746.  A duty

"consists of one party's obligation to conform to a particular

standard of care for the protection of another." *Id.*  "[T]he

legal concept of duty of care is necessarily rooted in often

amorphous public policy considerations, which may include our

perception of history, morals, justice and society." *Althaus v.

Cohen,* 756 A.2d 1166, 1169 (Pa. 2000).  "The determination of

whether a duty exists in a particular case involves the

weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor, and (5) the overall public interest in the proposed solution." Id. "Although these factors guide the court's inquiry '[i]n determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection from the harm suffered.'" *Berrier v. Simplicity Manufacturing, Inc.,* 563 F.3d 38, 61 (3d Cir. 2009)(quoting *Althaus, supra,* 756 A.2d at 1168-1169).

Wells Fargo contends that it did not owe a duty to the plaintiff because it was not involved in the loan origination or in the filing of the mortgage on the plaintiff's property. The plaintiff responds that he is not claiming to have been

damaged by the loan origination or the original error in drafting the mortgage. Rather, he claims to have been damaged by Wells Fargo's failure to release the mortgage after being notified of the error.[5] He contends that after being informed of the error, Wells Fargo owed him a duty to investigate and correct the error. Weighing the factors relevant to determining the existence of a duty, we agree that Wells Fargo owed the plaintiff a duty to investigate his contention (which was supported by reasons) that the mortgage was improperly filed on his property and to release the mortgage when the error was confirmed. Accordingly, Wells Fargo is not entitled to summary judgment on the plaintiff's negligence claim on the basis of a lack of duty.

---

[5] The amended complaint does allege that the original recording of the mortgage was negligent. *See Doc. 15 at ¶20.* However, we accept the plaintiff's assertion that he is not now claiming to have been damaged by the loan origination or the original error in drafting the mortgage. Given the plaintiff's contention we will limit his negligence claim to a claim that Wells Fargo was negligent in not releasing the mortgage after being informed of the error.

Wells Fargo also contends that it is entitled to summary judgment on the plaintiff's negligence claim because the plaintiff has not suffered any damage as a result of the mortgage. However, the plaintiff has presented evidence that he sold one of the parcels at less than full value because of the mortgage. *See Doc. 60-10 at 17-18 (James Elder Morrison Dep. at 116-117)(testimony from the plaintiff that his brother told the plaintiff that he would not pay $10,000 per acre with the lien but that he would only pay $7,5000 per acre); Doc. 60-11 at 6 & 12(David Morrison Dep. at 14 & 31)(testimony from plaintiff's brother that the lien on the property was a factor in the price he was willing to pay for the property and that if there had been no problem with the lien he would have agreed to pay $10,000 per acre); Doc. 60-13 (affidavit and appraisal report of Laurence W. Brodisch)(stating opinion that market value of the parcel sold to the plaintiff's brother was $10,144 per acre).*[6] Accordingly, Wells Fargo is not entitled to

---

6. Wells Fargo filed a motion in limine seeking to exclude testimony from Laurence W. Brodisch. However, Wells Fargo did not challenge Brodisch's report in connection with the summary

(continued...)

summary judgment on the plaintiff's negligence claim based on a lack of damages.

UTPCPL Claim.

"[T]he UTPCPL is designed to protect the public from fraud and deceptive business practices." *Gardner v. State Farm Fire & Casualty Co.,* 544 F.3d 553, 564 (3d Cir. 2008). "The statute provides a private right of action for '[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property' on account of the seller's unfair or deceptive acts or practices." *Id.* (quoting 73 P.S. § 201.9.2(a)). "In order for a private individual to bring a cause of action, that individual must first establish the following: 1) that he or she is a purchaser or lessee; 2) that the transaction is dealing with goods or services; 3) that the good or service was primarily for personal, family, or

6.  (...continued)
judgment motion.

household purposes; and 4) that he or she suffered damages arising from the purchase or lease of goods or services." Keller v. Volkswagen of America, Inc., 733 A.2d 642, 646 (Pa.Super.Ct. 1999).

Wells Fargo contends that it is entitled to summary judgment on the plaintiff's UTPCPL claim because the plaintiff did not purchase any goods or services from it. The plaintiff contends that Wells Fargo's willful refusal to remove the mortgage when notified of the error is the economic equivalent of a purchase. Although creative, that argument is not persuasive. In connection with the mortgage, the plaintiff simply was not a purchaser or lessee of goods or services. Accordingly, defendant Wells Fargo is entitled to summary judgment on the plaintiff's UTPCPL claim.

Plaintiff's Other Claims.


        Wells Fargo is seeking summary judgment as to the

plaintiff's other claims - the conversion claim, the commercial

disparagement claim and the tortious interference with contract

claim.  Wells Fargo presents various arguments for why it is

entitled to summary judgment as to these claims.  The plaintiff

has not responded to these arguments.  Rather, in a footnote in

his brief in opposition to Wells Fargo's motion for summary

judgment, the plaintiff states that the explanations of duty,

breach and causation in the sections of his brief addressing

his negligence claim also support his conversion, commercial

disparagement and tortious interference with contract claims.

*See Doc. 59 at 15 n.3.*  Such a cursory statement in a footnote

is not sufficient to survive summary judgment.  The plaintiff

has not pointed to evidence from which a reasonable trier of

fact could conclude that he satisfies the elements of a

conversion claim, a commercial disparagement claim or a

tortious interference with contract claim.  Accordingly, Wells
Fargo is entitled to summary judgment as to those claims.

    <u>Attorney's Fees</u>.

Wells Fargo contends that the plaintiff is not entitled
to attorney fees.  We need not decide that issue at this point.

If the plaintiff prevails in this case and seeks
attorneys fees in connection with the instant action, the
provisions of Fed.R.Civ.P. 54(d)(2) will be applicable.  If the
plaintiff seeks attorney's fees as a element of damages, any
issues surrounding that may be raised at trial.

B.  Wells Fargo's Claims against Stewart Title.

Wells Fargo's brief in support of its motion for
summary judgment contains a heading entitled: "Stewart Title
breached the Title Policy and is required to fully indemnify

Wells Fargo Bank, N.A., as Trustee for any judgment entered in this action." *Doc. 54 at 26.* However, Wells Fargo has not presented an argument for how Stewart Title breached the title policy. Rather, Wells Fargo simply states that Stewart Title and/or its agent NREIS erred when conducting the title search on behalf of Provident and its successors, that the title commitment and policy incorrectly identified the property, that as a result of the title commitment and policy the mortgage was filed on the plaintiff's property and that Wells Fargo had no involvement with the origination of the loan. None of that provides any explanation for how Stewart Title allegedly breached the title policy. Accordingly, Wells Fargo is not entitled to summary judgment against Stewart Title.

V.   Stewart Title's Motion for Summary Judgment.


        Stewart Title is seeking summary judgment as to all of the claims against it by Wells Fargo.

<u>Negligence and Contribution Claims</u>.

Stewart Title contends that Wells Fargo's negligence and contribution claims are barred by the gist of the action doctrine.  We had previously dismissed Well Fargo's negligence claim against Stewart Title based on the gist of the action doctrine.  However, we permitted Wells Fargo to file an amended third-party complaint against Stewart Title.  Wells Fargo's amended third-party complaint contains a negligence claim.  We again conclude that Wells Fargo's negligence claim against Stewart Title is barred by the gist of the action doctrine.

"Pennsylvania courts use two methods to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract:" the gist of the action doctrine and the economic loss doctrine. *Bohler-Uddeholm America, Inc. V. Ellwood Group, Inc.,* 247 F.3d 79, 103 (3d Cir. 2001).  Under

the gist of the action doctrine, a tort claim can not be brought when the parties' obligations are defined by the terms of a contract and not by the larger social policies embodied in the law of torts. *Id.* at 104.

"The gist of the action doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *The Brickman Group, Ltd. v. CGU Ins. Co.,* 865 A.2d 918, 927 (Pa.Super.Ct. 2004). "As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (2002). It is possible that a breach of contract can give rise to an actionable tort. *The Brickman Group, supra,* 865 A.2d at 927. However, to be construed as a tort the wrong ascribed to the defendant must be the gist of the action with the contract being collateral. *Id.* "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the

former lie for the breach of duties imposed by mutual consensus." *Id.* "In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied by the law of torts." *Id.* "The focus of an analysis under the 'gist of the action' doctrine is whether 'actions lie from a breach of the duties imposed as a matter of social policy' or 'from the breach of duties imposed by mutual consensus.'" *Toledo Mack Sales & Service, Inc. v. Mack Truck, Inc.*, 530 F.3d 204, 229 (3d Cir. 2008).

Stewart Title argues that Wells Fargo's negligence and contribution claims are barred by the gist of the action doctrine because any duty owed by Stewart Title to Wells Fargo arises solely from the contractual relationship between Stewart Title and Wells Fargo.

Wells Fargo argues that its allegations relate not solely to the policy or to duties under the policy but to the

conduct of Stewart Title causing harm to the plaintiff, his
property interests and the property interests of Wells Fargo by
virtue of the mortgage lien.  However, the only relationship
between Wells Fargo and Stewart Title is the title policy.  As
Wells Fargo points out it was not involved in the original
closing.  Any duty by Stewart Title to Wells Fargo arises out
of the policy.

Wells Fargo points out that one of the harms in this
case is the cloud on the plaintiff's title and that the
plaintiff was not in privity of contract with Stewart Title.
However, that is beside the point, since we are addressing
Wells Fargo's claims against Stewart Title.

Wells Fargo also asserts that NREIS as agent for
Stewart Title was negligent in conducting the title search and
preparing the closing documents.  Even assuming arguendo that
NREIS was an agent of Stewart Title with respect to conducting

the title search and preparing the closing documents,[7] Wells

Fargo was not involved in the original closing.  Again, the

relationship between Wells Fargo and Stewart Title arises out

of the title policy.   Accordingly, we conclude that Wells

Fargo's negligence claim against Stewart Title is barred by the

gist of the action doctrine.  Similarly, since Wells Fargo's

contribution claim against Stewart Title is based on negligence

principles it is also barred by the gist of the action

doctrine.   Therefore, Stewart Title is entitled to summary

judgment as to Wells Fargo's negligence and contribution

claims.


         Breach of Contract and Indemnity Claims.


         Stewart Title contends that it is entitled to summary

judgment as to Wells Fargo's breach of contract and indemnity

claims based on the unambiguous language of the policy.

---

7.    However, Stewart Title contends that NREIS is a limited non-exclusive agent of Stewart Title and that the agency relationship is limited to issuance of title insurance policies as defined by the Title Insurance Underwriting Agreement between Stewart Title and NREIS. *See supra, footnote 2.*

Under Pennsylvania law, the interpretation of an insurance contract is a question of law. *401 Fourth St., Inc. v. Investors Ins. Group,* 879 A.2d 166, 170 (Pa. 2005). The task of interpreting an insurance contract is generally performed by the court rather than a jury, and "[t]he purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Id.* at 171. "When the language of the policy is clear and unambiguous, a court is required to give effect to that language." *Id.* "Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005). "After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage." *Id.* at 226.

"The duty to defend is a distinct obligation, different from and broader than the duty to indemnify." *Sikirica*, *supra,* 416 F.3d at 225.  The duty to defend arises whenever the underlying complaint may potentially come within the insurance coverage. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999). "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Id.* "It follows that there may be a duty to defend without a duty to indemnify." *Id.*  However, "[b]ecause the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." *Sikirica*, *supra,* 416 F.3d at 225.  The insurer's duty to defend is determined by the allegations in the underlying complaint. *Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins.,* 65 F.3d 1097, 1100 (3d Cir. 1995).  "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in

favor of the insured." *Frog, Switch, supra.,* 193 F.3d at 746.

"Any doubts regarding the insurer's duty to defend must be

resolved in favor of the insured." *Western World Ins. Co. v.*

*Reliance Ins. Co.,* 892 F.Supp. 659, 662 (M.D.Pa. 1995).

"However, the particular cause of action that a complainant

pleads is not determinative of whether coverage has been

triggered." *Erie Ins. Exchange v. Muff,* 851 A.2d 919, 926

(Pa.Super.Ct. 2004). "Instead it is necessary to look at the

factual allegations contained in the complaint." *Id.*


"[C]overage clauses are interpreted broadly so as to

afford the greatest possible protection to the insured."

*Eichelberger v. Warner*, 434 A.2d 747, 750 (Pa.Super.Ct. 1981).

On the other hand, exceptions to an insurer's general liability

are interpreted narrowly against the insurer. *Id.*


In the instant case, the policy provides coverage as

follows:

                    SUBJECT TO THE EXCLUSIONS FROM COVERAGE,
            THE EXCEPTIONS FROM COVERAGE CONTAINED IN

> SCHEDULE B AND THE CONDITIONS AND STIPULATIONS,
> STEWART TITLE GUARANTY COMPANY, a Texas
> corporation, herein called the Company,
> insures, as of Date of Policy shown in Schedule
> A, against loss or damage, not exceeding the
> Amount of Insurance stated in Schedule A,
> sustained or incurred by the insured by reason
> of:
>> 1.  Title to the estate or interest
>> described in Schedule A being vested other
>> than as stated therein;
>> . . .
>> 5. The invalidity or unenforceability of
>> the lien of the insured mortgage upon the
>> title.

*Doc. 56-4 at 1.* Schedule A provides that the "estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is fee simple and is at Date of Policy vested in: JAMES E. MORRISON." *Doc. 56-4 at 5.* Schedule A also provides that the insured mortgage is the mortgage from James E. Morrison and Erin Morrison recorded on August 20, 2002. *Id.* Schedule A further describes that land by referencing the deed to the plaintiff from his father and by referencing the parcel number of the plaintiff's property. *Id.* The policy provides: "This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by

48

the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described." *Doc. 56-4 at 3 at ¶7.*

The policy provides that "[t]he Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations." *Doc. 56-4 at 1.* Paragraph 4(a) of the Conditions and Stipulations of the policy provides:

> Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by

>the insured in the defense of those causes of
>action which allege matters not insured against
>by this policy.

*Doc. 56-4 at 3.*

Wells Fargo contends that Stewart Title breached the policy by refusing to continue to defend Wells Fargo in this case.

Stewart Title contends that once the mortgage was paid in full any obligation under the policy on its part was terminated.  Stewart Title cites paragraph 9(c) of the Conditions and Stipulations of the policy, which provides that "[p]ayment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations." *Doc. 56-4 at 4 at ¶9(c).*

Wells Fargo responds that pursuant to Paragraph 2(a)(i) of the Conditions and Stipulations of the policy Stewart

Title's obligations under the policy did not terminate upon payment of the mortgage.  Paragraph 2(a)(i) of the Conditions and Stipulations of the policy provides that "[t]he coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage." *Doc. 56-4 at 2 at ¶2(a)(i).*

After counsel retained by Stewart Title to represent Wells Fargo filed an action in the Court of Common Pleas of Perry County against James Eugene Morrison, Erin Morrison, Blaine Morrison and Elizabeth Morrison[8], the mortgage in this case was paid.  There is no evidence that Wells Fargo acquired

---

8. That action was apparently brought pursuant to Paragraph 4(b) of the Conditions and Stipulations of the policy which provides that the "Company shall have the right, at its own costs, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured." *Doc. 56-4 at 3 at ¶4(b).*

any interest in the property.  Accordingly, Paragraph 2(a)(i) of the Conditions and Stipulations of the policy does not apply.  We agree with Stewart Title that once the mortgage was paid its obligations under the policy ended.  Thus, Wells Fargo can not establish that Stewart Title breached the policy by refusing to continue to defend Wells Fargo after the mortgage was paid.[9]  Therefore, Stewart Title is entitled to summary judgment on the plaintiff's breach of contract and indemnification claims.

Bad Faith.

Stewart Title seeks summary judgment as to Wells Fargo's bad faith claim.

---

[9]. Although Wells Fargo's brief in opposition to Stewart Title's motion for summary judgment as to the breach of contract and indemnification claims mentions in passing some other acts by Stewart Title, Wells Fargo argues explicitly only that Stewart Title breached the policy by refusing to continue to defend Wells Fargo.  Accordingly, we limit our discussion to that contention.

Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371, provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

"Bad faith" is "'any frivolous or unfounded refusal to pay proceeds of a policy.'" *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (1994)(quoting *Black's Law Dictionary* 139 (6th ed. 1990)). "Ultimately, in order to recover on a bad faith claim, the insured must prove: (1)that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Northwestern Mutual Life Ins. Co. v.*

*Babayan,* 430 F.3d 121, 137 (3d Cir. 2005). "Although the insurer's conduct need not be fraudulent, 'mere negligence or bad judgment is not bad faith.'" *Id.* (quoting *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa.Super.Ct. 2004)). The insured must proved bad faith by clear and convincing evidence. *Id.* "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Id.* (quoting *Kosierowski v. Allstate Ins. Co.,* 51 F.Supp.2d 583, 588 (E.D.Pa. 1999).

Wells Fargo contends that Stewart Title acted in bad faith by refusing to continue to defend Wells Fargo. That claim necessarily fails in light of our conclusion that Stewart Title's obligations under the policy ended once the mortgage was paid in full. Accordingly, Stewart Title is entitled to summary judgment as to Wells Fargo's bad faith claim.

VI. Order.

**IT IS ORDERED** that the motion (doc. 53) for summary judgment by Wells Fargo is **GRANTED IN PART AND DENIED IN PART**. The motion is denied as to Count I (negligence) of the amended complaint. The motion is granted as to Count II (conversion), Count III (commercial disparagement), Count IV (tortious interference with contract) and Count V (UTPCPL) of the amended complaint. The Clerk of Court shall not enter judgment in favor of Wells Fargo on Counts II, III, IV and V of the amended complaint until the conclusion the entire case.

**IT IS FURTHER ORDERED** that the motion (doc. 56) of Stewart Title for summary judgment as to the claims by Wells Fargo in Wells Fargo amended third-party complaint is **GRANTED**. The Clerk of Court shall not enter judgment in favor of Stewart Title until the conclusion the entire case.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge
Dated: May 10, 2010.